UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

**MICHAEL D. HIGGINS,**

                            Petitioner,

               v.                                   9:08-CV-992
                                                                   (FJS)

**DALE ARTUS,**

                            Respondent.
_____

**APPEARANCES**                                     **OF COUNSEL**

**MICHAEL D. HIGGINS**
**05-B-3331**
Washington Correctional Facility
Box 180
72 Lock 11 Lane
Comstock, New York 12821
Petitioner *pro se*

**OFFICE OF THE NEW YORK**          **LISA E. FLEISCHMANN, AAG**
**STATE ATTORNEY GENERAL**
120 Broadway
New York, New York 10271
Attorneys for Respondent

**SCULLIN, Senior Judge**

**MEMORANDUM-DECISION AND ORDER**

**I. BACKGROUND**

**A.**    **Proceedings in state court**

    The record reflects that the victim, T.W.,[1] began dating Petitioner in May, 2001. *See*

---

[1] Under New York law, "[t]he identity of any victim of a sex offense . . . shall be confidential. No . . . court file or other documents, in the custody or possession of any public officer or employee, which identifies such a victim, shall be made available for public inspection.
(continued...)

Transcript of Trial of Michael D. Higgins dated July 11, 2005 ("Trial Tr."), at 453. In the summer of 2003, however, the two had what T.W. described as an "extremely horrible" fight; and she asked Petitioner to leave her home. *See id.* at 459. Petitioner then moved to Maine; however, the two still kept in contact with one another. *See id.* at 459-60.

In July, 2004, Petitioner moved back to upstate New York; and, although he and T.W. did not live together upon his return to New York, the two soon thereafter resumed their prior relationship. *See id.* at 460-63.

On the evening of December 18, 2004, approximately seven to ten days after the two had their "final good moment," *see id.* at 463, Petitioner called T.W. at the local tavern where she worked as a part-time waitress/bartender and asked her what time the kitchen closed and whether he could come by her place of employment. *See id.* at 464-67. T.W. informed him that he could "do whatever [he] want[ed]" with respect to coming to the tavern; and he, in turn, assured her that he would not "cause any problems." *See id.* at 467. When T.W. later saw Petitioner enter the tavern, she and her friend Tina decided it was "a good time to exit" and go to a party at another location to which they had both been invited. *See id.* at 468-69. The two then decided to leave the tavern through the kitchen so as to avoid a confrontation with Petitioner. *See id.* at 469.

Later that evening, T.W. and Tina returned to the tavern; and soon thereafter Petitioner offered to buy T.W. a drink. *See id.* at 471. She refused; and Petitioner was eventually forced to leave the tavern because of his behavior. *See id.* at 473. At approximately 2:30 a.m. on

---

[1](...continued)
. . ." N.Y. Civil Rights Law § 50-b(1). In light of this statute, the Court will refer to the victim as "T.W." in an effort to maintain her privacy. *See Lucidore v. N.Y. State Div. of Parole*, 209 F.3d 107, 109 n.4 (2d Cir. 2000) (holding that substantial compliance with this statute is obtained where court refers to the victim by use of initials).

December 19, 2004, Petitioner called T.W. and declared that he could not "believe [she] had [him] thrown out of" the tavern because he had "never been thrown out of anywhere in [his] life." *See id.* at 474.

Later that morning, Petitioner began repeatedly calling T.W. and complaining about the fact that he had been removed from the tavern. *See id.* at 476. During one of these calls, Petitioner informed T.W. that he was coming to her home to see her. *See id.* at 476-77. T.W. told him not to come to her house; however, he replied, "too late, I'm pulling in." *See id.* at 477. Petitioner then came to the door and demanded that T.W. allow him inside. *See id.* When T.W. cracked the door open, Petitioner forced his way inside, knocking her backwards into her home. *See id.* Once inside, Petitioner held T.W. down with his fingers wrapped around her throat and chastised her for having him physically removed from the tavern. *See id.* at 478. He then got a glass of water and soon thereafter threw the water in her face. *See id.* at 479. The confrontation continued when T.W. went outdoors for a brief period of time, *see id.* at 479-81; and, when the two went back inside her home, Petitioner formed the shape of a gun with his hand and said, "I can kill you, I'll kill myself, I'll kill you, then I'll kill myself, it doesn't matter anymore." *See id.* at 482.

When Petitioner subsequently saw T.W. holding her car keys, he demanded to know where she was going; but, before she could answer, he pushed her onto the kitchen floor, knocking her keys away. *See id.* He then grabbed her and carried her upstairs to her bed. *See id.* at 482-83. When she tried to get up, he became angry and kicked in the louver doors on her bedroom closet. *See id.* at 483. He then grabbed her pajama bottoms, ripped them down the seam, and told her that he was the only one with whom she could have relations. *See id.* When

he unbuckled his pants, T.W. pleaded with him to stop; however, he ignored her pleas and, instead, attempted to place his penis in her vagina. *See id.* at 484. When that proved unsuccessful, he forced his fingers into her vagina without her consent and then sat with his knees on her shoulders and tried to force his penis into her mouth; however, she kept her lips closed in an attempt to prevent him from fully accomplishing that act. *See id.* at 485-86. After Petitioner ejaculated while on top of T.W., he "took out a towel and cleaned himself off." *See id.* at 486-87. Soon thereafter, Petitioner left T.W.'s home.

Sometime after Petitioner had left T.W.'s residence, he called her to apologize for his conduct and advised her that he was "sick about what happened." *See id.* at 487. Although he initially began crying, he eventually became angry with her and threatened to kill her and himself. *See id.* at 487-88.

T.W. testified that, despite the assault, she was still concerned about Petitioner possibly taking his own life so she went to his home "to make sure he hadn't done anything wrong to himself." *See id.* at 490-91. Once she was there, she "made a deal with him," whereby she agreed to accept a bracelet that he had previously purchased for her in exchange for his promise "not to do anything to himself." *See id.* at 491. After that meeting, Petitioner repeatedly called T.W. and left messages on her answering machine in which he accused her of being a liar and a "bad person." *See id.* at 495-98. He became "madder and madder" and eventually left a message in which he said, "remember [T.W.], tick, tick, tick." *See id.* at 499. That final message, which Petitioner left on T.W.'s answering machine on December 21, 2004, prompted T.W. to call the Cobleskill Police Department to report what Petitioner had done to her on December 19, 2004, as well as Petitioner's subsequent telephone calls and messages to her residence. *See id.*

As a result of the foregoing, on January 28, 2005, a Schoharie County grand jury returned a multi-count indictment against Petitioner, charging him with (1) criminal sexual act in the first degree, in violation of New York Penal Law § 130.50(1); (2) attempted rape in the first degree, in violation of Penal Law §§ 110 and 130.35(1); (3) two counts of sexual abuse in the first degree, in violation of § 130.65(1); (4) forcible touching, in violation of Penal Law § 130.52; (5) second degree unlawful imprisonment, in violation of Penal Law § 135.05; (6) fourth degree criminal mischief, in violation of Penal Law § 145.00(1); and (7) third degree menacing, in violation of Penal Law § 120.15. *See* Dkt. No. 11, Exhibit "E" ("Indictment").

Petitioner's jury trial on these charges commenced on July 11, 2005, in Schoharie County Court, with County Court Judge George R. Bartlett, III presiding. At the conclusion of the trial, the jury acquitted Petitioner of the attempted rape, first degree sexual abuse, and criminal mischief charges but found him guilty of criminal sexual act in the first degree, forcible touching, second degree unlawful imprisonment, and third degree menacing. *See* Trial Tr. at 1347-51. On November 16, 2005, Judge Bartlett sentenced Petitioner to twelve and one-half years of imprisonment on the criminal sexual act conviction and lesser, concurrent terms on the remaining convictions. *See* Transcript of Sentencing of Michael D. Higgins dated November 16, 2005, at 19-20.

Petitioner appealed the foregoing to the New York State Supreme Court, Appellate Division, Third Department; on November 8, 2007, that court affirmed Petitioner's convictions and sentences in all respects. *See People v. Higgins*, 45 A.D.3d 975 (3d Dep't 2007). On February 29, 2008, the New York Court of Appeals denied Petitioner's application for leave to appeal. *See People v. Higgins*, 10 N.Y.3d 766 (2008). Petitioner did not file any other state-

court challenges to his convictions other than his direct appeal.  *See* Dkt. No. 1 at ¶ 10.

**B.    The current action**

Petitioner filed his habeas petition pursuant to 28 U.S.C. § 2254 on September 12, 2008. *See* Dkt. No. 1.  In that pleading, Petitioner asserted that he was entitled to habeas relief because (1) the jury's verdict was "not supported by the evidence presented" and against the weight of the evidence; (2) the County Court erred in allowing the prosecution to present a rebuttal witness; and (3) the imposed sentence was harsh and excessive.  *See* Dkt. No. 1, Grounds One through Three.

On February 26, 2009, Respondent filed, under seal, a memorandum of law in opposition to Petitioner's pleading, *see* Dkt. No. 10, together with various state-court records relating to Petitioner's convictions, *see* Dkt. No. 11.  Respondent argued that all of Petitioner's claims lacked merit.  *See* Dkt. No. 10.

On April 10, 2009, Petitioner filed a traverse in further support of his request for federal habeas intervention.  *See* Dkt. No. 13.

## II. DISCUSSION

**A.    Deference to be afforded state-court decisions**

Enactment of the Anti-Terrorism and Effective Death Penalty Act ("AEDPA") brought about significant new limitations on the power of a federal court to grant habeas relief to a state prisoner under 28 U.S.C. § 2254.  In discussing this deferential standard, the Second Circuit noted in *Jones v. West*, 555 F.3d 90 (2d Cir. 2009), that

> a federal court may grant a writ of habeas corpus for a claim that has previously been adjudicated on the merits by a state court only if the adjudication of the claim:
>
> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

*Id.* at 96 (quoting 28 U.S.C. § 2254(d)); *see also DeBerry v. Portuondo*, 403 F.3d 57, 66 (2d Cir. 2005); *Miranda v. Bennett*, 322 F.3d 171, 177-78 (2d Cir. 2003); *Boyette v. LeFevre*, 246 F.3d 76, 88 (2d Cir. 2001).

In providing guidance concerning application of this standard, the Second Circuit has observed that

> a state court's decision is "contrary to" clearly established federal law if it contradicts Supreme Court precedent on the application of a legal rule, or addresses a set of facts "materially indistinguishable" from a Supreme Court decision but nevertheless comes to a different conclusion than the Court did. [*Williams v. Taylor*, 529 U.S. 362,] 405-06, 120 S. Ct. 1495 [(2000)]; *Loliscio v. Goord*, 263 F.3d 178, 184 (2d Cir. 2001). . . . [A] state court's decision is an "unreasonable application of" clearly established federal law if the state court "identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts" of the case before it. *Williams*, 529 U.S. at 413, 120 S. Ct. 1495.

*Thibodeau v. Portuondo*, 486 F.3d 61, 65 (2d Cir. 2007); *see also Williams v. Artuz*, 237 F.3d 147, 152 (2d Cir. 2001) (citing *Francis S. v. Stone*, 221 F.3d 100, 108-09 (2d Cir. 2000) (citing *Williams v. Taylor*)).

Significantly, a federal court engaged in habeas review is not charged with determining whether the state court's ruling was merely incorrect or erroneous but instead whether such decision was "objectively unreasonable." *Williams v. Taylor*, 529 U.S. 362, 409 (2000); *see also*

*Sellan v. Kuhlman*, 261 F.3d 303, 315 (2d Cir. 2001) (citation omitted). "While '[t]he precise method for distinguishing objectively unreasonable decisions from merely erroneous ones' is somewhat unclear, 'it is well-established in this Circuit that the "objectively unreasonable" standard of § 2254(d)(1) means that petitioner must identify some increment of incorrectness beyond error in order to obtain habeas relief.'" *Sorto v. Herbert*, 497 F.3d 163, 169 (2d Cir. 2007) (quotation omitted). That increment, however, "'need not be great; otherwise *habeas* relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence.'" *Overton v. Newton*, 295 F.3d 270, 277 (2d Cir. 2002) (quotation and other citations omitted).

B.     **Review of Petitioner's claims**

   *1. Sufficiency of evidence*

      *a. Clearly established Supreme Court precedent*

The Due Process Clause of the Fourteenth Amendment protects a defendant in a criminal case against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crimes with which he is charged. *See Fiore v. White*, 531 U.S. 225, 228-29 (2001) (citations omitted); *Jackson v. Virginia*, 443 U.S. 307, 316-22 (1979); *In re Winship*, 397 U.S. 358, 361-64 (1970). An inquiry into whether there was sufficient evidence adduced at trial to support a conviction "does not focus on whether the trier of fact made the *correct* guilt or innocence determination, but rather whether it made a *rational* decision to convict or acquit." *Herrera v. Collins*, 506 U.S. 390, 402 (1993).

### b. Contrary to, or unreasonable application of, clearly established Supreme Court precedent

In support of his claim challenging the evidence of his guilt adduced at trial, Petitioner contends that T.W. provided contradictory statements concerning what occurred on December 19, 2004, and notes that she waited a number of days – and accepted a gift from him – before she reported the incident to the authorities. *See* Dkt. No. 1 at 9.[2]  He also argues that T.W. threw away the pajamas that he allegedly ripped during the assault – evidence that would have corroborated her story – and that the towel in her residence that contained Petitioner's deoxyribonucleic acid ("DNA") had been "left on the floor for days" and, in addition to his DNA, such towel contained the victim's DNA as well as DNA "from an unknown source." *See id.*; *see also* Dkt. No. 13 at 6-7.

In the related criminal matter, the Appellate Division rejected Petitioner's challenge relating to the evidence of guilt presented at his trial, which Petitioner brought as a challenge to the weight of the evidence adduced at trial. *See Higgins*, 45 A.D.3d at 977. This Court must, therefore, ascertain whether that determination was either contrary to, or represented an unreasonable application of, the above-referenced clearly established Supreme Court precedent. *See, e.g., Holifield v. Superintendent, Southport Corr. Facility*, No. 9:06-CV-1396, 2009 WL 160815, *3 (N.D.N.Y. Jan. 22, 2009) (literally construing appellate claim challenging the weight

---

[2] Petitioner attached several pages to his petition when he commenced this action. *See* Dkt. No. 1 & attached pages. When the Court docketed that pleading, the Clerk of the Court's docketing system generated page numbers for each page of that pleading, including all attached pages. The Court's reference to the page numbers of Petitioner's pleading in this Memorandum-Decision and Order refers to the page numbers generated when the Clerk of the Court docketed the petition.

of the evidence as federal habeas claim challenging the sufficiency of the evidence).[3]  At trial, defense counsel thoroughly cross-examined T.W.  *See* Trial Tr. at 534-653, 772-94.  During the questioning of T.W., defense counsel brought out the facts that T.W. (1) had made inconsistent statements to investigators about what transpired on the day she was assaulted; (2) discarded the pajamas that could have provided highly corroborative evidence of her claims; (3) accepted a bracelet as a gift from Petitioner after the assault and before she reported the crimes to law enforcement agents; (4) failed to report the incident to the police promptly; and (5) had had consensual sexual intercourse with Petitioner within two weeks of the sexual assaults.  *See id.*  The jury was also made aware, through defense counsel's cross-examination of prosecution witness Julie Pizziketti, that the towel that was received in evidence contained not only the DNA of Petitioner and T.W. but also the DNA of a third, unknown person.  *See id.* at 991-92.  The foregoing establishes that the jury was necessarily aware of the issues that Petitioner referenced in his first ground for relief and in his traverse regarding the relative strengths and weaknesses of

---

[3] To the extent Petitioner argues that he is entitled to federal habeas relief because his conviction was against the weight of the evidence, *see* Dkt. No. 1, Ground One, the Court notes that "[w]eight of the evidence review . . . is a product of New York state statute and therefore merely a state law issue."  *Graham v. Ricks*, No. 9:02-CV-0303, 2004 WL 768579, *14 (N.D.N.Y. Apr. 7, 2004) (citing N.Y. Crim. Proc. Law § 470.15) (other citation omitted); *see also Cardena v. Giambruno*, No. 03 CIV 3313, 2004 WL 239722, *4 (S.D.N.Y. Feb. 10, 2004) (citations omitted).  It is well-established that habeas corpus review is not available for errors of state law.  *See Estelle v. McGuire*, 502 U.S. 62, 67-69 (1991) (citations omitted).  Thus, Petitioner's federal habeas challenge to the weight of the evidence offered against him at trial is not cognizable in this action.  *See Graham*, 2004 WL 768579, at *14; *Robinson v. Ricks*, No. 00 CV 4526, 2004 WL 1638171, *3 (E.D.N.Y. July 22, 2004) (holding that "[c]hallenges to the weight of the evidence supporting a conviction are not cognizable on federal habeas review" (citing *Maldonado v. Scully*, 86 F.3d 32, 35 (2d Cir. 1996))); *Camacho v. McKinney*, No. 04 Civ. 2226, 2004 WL 1490308, *1 (S.D.N.Y. July 1, 2004) (holding that "petitioner's first ground . . . arguing only that the verdict was against the weight of the evidence – [] raises no claim cognizable in a federal habeas corpus proceeding").

the prosecution's case against Petitioner; nevertheless, the jury convicted Petitioner of the above-referenced crimes.

This Court must defer to the jury's credibility findings concerning the testimony of T.W. – who provided highly specific and compelling testimony concerning Petitioner's conduct on December 19, 2004, and his conduct on the days immediately following that incident, *see* Trial Tr. 480-89 – as well as the jury's credibility findings regarding the testimony of the other witnesses who testified at Petitioner's trial.  *See Daily v. New York*, 388 F. Supp. 2d 238, 248 (S.D.N.Y. 2005) (holding that, where "there is evidence from which the jury could have drawn an inference favorable to the accused but chose not to, the court must 'defer to . . . the jury's choice of the competing inferences'" (quoting *United States v. Kinney*, 211 F.3d 13, 18 (2d Cir. 2000) (quoting *United States v. Morrison*, 153 F.3d 34, 49 (2d Cir. 1998)))); *see also Bellezza v. Fischer*, Nos. 01-CV-1445, 03-MISC-0066, 2003 WL 21854749, *15 (E.D.N.Y. Aug. 6, 2003) (holding that, on collateral review, a federal habeas court "'"must presume that the jury resolved any questions of credibility in favor of the prosecution"'" (quoting *Vera v. Hanslmaier*, 928 F. Supp. 278, 284 (S.D.N.Y. 1996) (quoting *Anderson v. Senkowski*, No. CV-92-1007, 1992 WL 225576 at *3 (E.D.N.Y. 1992)))) (other citation omitted).[4]

Nor can Petitioner obtain federal habeas relief based on his (unexhausted) claim that the

---

[4] To the extent Petitioner now argues that T.W.'s testimony was incredible as a matter of law, *see* Dkt No. 13 at 6-7, this Court notes that "the trial testimony of a witness may only properly be considered incredible as a matter of law 'where the witness testifies as to facts that [he or she] could not have possibly observed or events that could not have occurred under the laws of nature.'" *Toland v. Walsh*, No. 9:04-CV-0773, 2008 WL 65583, *17 (N.D.N.Y. Jan. 4, 2008) (quoting *Simpson*, 2002 WL 31045862, at *9).  Since Petitioner has entirely failed to demonstrate that T.W.'s testimony was incredible as a matter of law, the Court cannot grant this aspect of Petitioner's petition on this basis.

jury's verdict was allegedly repugnant, *see* Dkt. No. 1 at 8, because it is well-settled that "[i]nconsistency in a verdict is not a sufficient reason for setting it aside." *Harris v. Rivera*, 454 U.S. 339, 345 (1981); *see United States v. Powell*, 469 U.S. 57, 65-66 (1984) (inconsistent verdicts are not subject to judicial review (citations omitted)); *Johnson v. Fitzpatrick*, 9:08-CV-1194, 2010 WL 421127, *12 (N.D.N.Y. Feb. 1, 2010) (holding that a claimed inconsistency in jury's verdict does not afford a court a basis on which it may grant federal habeas relief (citations omitted)).[5]

A habeas petitioner "'bears a very heavy burden in convincing a federal habeas court to grant a petition on the grounds of insufficiency of the evidence.'" *Policano v. Herbert*, 507 F.3d 111, 116 (2d Cir. 2007) (quoting *Fama v. Comm'r of Corr. Servs.*, 235 F.3d 804, 811 (2d Cir. 2000)). Such a challenge "does not require a court to 'ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt.'" *Jackson*, 443 U.S. at 318-19 (quoting *Woodby v. INS*, 385 U.S., at 282, 87 S. Ct., at 486). "Rather, the well-established Supreme Court precedent holds that 'the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.'" *Murray v. Greene*, No. 9:06-CV-0322, 2009 WL 3165637, *12 (N.D.N.Y. Sept. 29, 2009) (quoting *Jackson*, 443 U.S. at 318-19). Since Petitioner has failed to meet the heavy burden required of him to prevail on his initial ground for relief, this Court denies his claim that the verdict that the jury reached was not

---

[5] Under the AEDPA, a federal district court has the authority to deny, but not to grant, an unexhausted claim on the merits and to consider the exhausted claims on the merits. *See Aparicio v. Artuz*, 269 F.3d 78, 90 n.5 (2d Cir. 2001); *Cuadrado v. Stinson*, 992 F. Supp. 685, 687 (S.D.N.Y. 1998).

supported by sufficient evidence and/or that such verdict was repugnant.

### 2. Claimed trial court error

In his second ground, Petitioner argues that the trial court erred in allowing the prosecution to call a rebuttal witness after the defense rested without having presented any evidence in its defense to the charges against Petitioner. *See* Dkt. No. 1, Ground Two. The Appellate Division determined that the County Court did not commit error in allowing the jury to hear that evidence. *See Higgins*, 45 A.D.3d at 978,

The Supreme Court has opined that a constitutional error in a state-court criminal trial is harmless as long as it did not have a "substantial and injurious effect" on the jury's verdict. *Fry v. Pliler*, 551 U.S. 112, 121-22 (2007) (citing *Brecht [v. Abrahamson]*, 507 U.S. 619, 113 S. Ct. 1710, 123 L. Ed. 2d 353 [(1993)]); *see also Rice v. Senkowski*, No. 9:04-CV-335, 2007 WL 2789504, *7 (N.D.N.Y. Sept. 24, 2007). Subsequent to *Fry*, the Second Circuit noted that some federal habeas courts have additionally reviewed claimed errors of the state court to ascertain whether, in denying the appeal, the state court unreasonably applied the standard that the Supreme Court announced in *Chapman v. California*, 386 U.S. 18 (1967).[6]  *See Perkins v. Herbert*, 596 F.3d 161, 175-76 (2d Cir. 2010) (citations omitted). The *Perkins* court ultimately declined to determine which of the above-referenced tests was appropriate to apply in the case before it because the result was identical "under either test." *Id.* at 176-77 (citations omitted).

As discussed more fully below, this Court finds that Petitioner is not entitled to the relief

---

[6] In *Chapman*, the Supreme Court held that, "before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt." *Chapman*, 386 U.S. at 24.

he seeks with respect to his second ground applying both the *Brecht* and *Chapman* tests. Therefore, this Court declines to consider whether it must find both a lack of reasonableness on the part of the state court's ruling under AEDPA/*Chapman*, as well as under *Brecht*, before issuing the writ of habeas corpus "because the standards both 'produce the same result in this case.'" *Perkins*, 596 F.3d at 176-77 (quotation omitted).

The record reflects that a sergeant with the Cobleskill Police Department testified for the prosecution that a number of police officers attended a party at the tavern where T.W. worked on the evening of December 19, 2004 – the same day on which T.W. testified that Petitioner assaulted her. *See* Trial Tr. at 1117-18. The sergeant testified that, although T.W. was working at the tavern during the party, she never communicated to any of the officers at the party that Petitioner had assaulted her earlier that day. *See id.* at 1118-19. After both the prosecution and the defense rested their respective cases,[7] the prosecution requested permission from the County Court to call a rebuttal witness who would provide the jury with an explanation as to why T.W. failed to notify any of the police officers at the December 19, 2004 party that she had just been sexually assaulted. *See id.* at 1157-59. The defense objected, noting that, because the defense "didn't put on any witnesses, there [was] nothing to rebut, except [for the prosecution's] own witnesses." *See id.* at 1157. The trial court ultimately allowed the prosecution to call a rebuttal witness, concluding that the proposed testimony was proper in light of the inference that defense counsel's questioning of the sergeant about the party at which the victim and a number of the

---

[7] The defense rested its case without calling any witnesses.

-14-

police officers were present on December 19, 2004, raised. *See id.* at 1172-73.[8]

"'[T]he introduction of improper evidence against a defendant does not amount to a violation of due process unless the evidence "is so extremely unfair that its admission violates fundamental conceptions of justice."'" *Harris v. Smith*, No. 9:04CV1268, 2008 WL 3155200, *11 (N.D.N.Y. Aug. 4, 2008) (quoting [*Dunnigan v. Keane*, 137 F.3d 117, 125 (2d Cir. 1998)]) (other citations omitted). In considering a claim that a trial court improperly allowed the prosecution to offer evidence against the petitioner at trial, the habeas court

> is to determine "whether the erroneously admitted evidence, viewed objectively in light of the entire record . . . was sufficiently material to provide the basis for conviction or to remove a reasonable doubt that would have existed on the record without it. In short it must have been crucial, critical, highly significant."

*Harris*, 2008 WL 3155200, at *11 (quoting *Collins [v. Scully*, 75 F.2d 16,] 19 [(2d Cir. 1985)]) (other citation omitted); *see also Cunningham v. Bennett*, No. 02 CV 4635, 2005 WL 1162475, *6-*7 (E.D.N.Y. May 16, 2005) (denying habeas claim alleging erroneous admission of rebuttal evidence).

As the Appellate Division noted in rejecting this claim in the context of Petitioner's direct appeal, Petitioner's principal defense to the charges against him "focus[ed] almost entirely on the conduct of the victim immediately following the alleged attack." *Higgins*, 45 A.D.3d at 978. Since, as the Appellate Division observed, "the victim's conduct on the day of the incident was therefore a crucial issue" at Petitioner's trial, *id.*, this Court agrees with the Appellate Division that the County Court did not err in permitting the prosecution to offer the limited rebuttal

---

[8] That rebuttal witness ultimately testified that, on the night of the party, T.W. was "visibly upset" and "not herself." *See* Trial Tr. at 1177.

testimony that forms the basis of this aspect of Petitioner's second ground for relief.[9]

In light of the foregoing, this Court concludes that Petitioner has failed to demonstrate that the trial court's claimed error in allowing the prosecution to use the rebuttal evidence discussed above had a "substantial and injurious effect" on the jury's verdict. *E.g., Fry*, 551 U.S. at 221-22. This Court further finds that this claimed error of the trial court was harmless beyond a reasonable doubt under the *Chapman* standard discussed above. *See Chapman*, 386 U.S. at 24. This Court, therefore, denies Petitioner's second ground for relief.

### 3. Harsh and excessive sentence

In his third and final ground seeking habeas intervention, Petitioner contends that the imposed sentence of twelve and one-half years of imprisonment is unduly harsh and excessive and should be reduced in the interests of justice. *See* Dkt. No. 1, Ground Three; Dkt. No. 13 at 9.

This claim, however, fails to acknowledge the established authority that holds that "[n]o federal constitutional issue is presented where . . . the sentence is within the range prescribed by state law." *White v. Keane*, 969 F.2d 1381, 1383 (2d Cir. 1992) (citing *Underwood v. Kelly*, 692 F. Supp. 146 (E.D.N.Y. 1988), *aff'd mem.*, 875 F.2d 857 (2d Cir. 1989)); *see also Todd v. Superintendent*, No. 9:08-CV-1209, 2009 WL 5216944, *7 (N.D.N.Y. Dec. 30, 2009) (quotation and other citations omitted). Petitioner's appellate counsel conceded that the imposed sentence did not exceed the maximum term permitted by law; such counsel noted that the trial court could have sentenced Petitioner to a term of imprisonment "not [to] exceed twenty-five years" on his

---

[9] The rebuttal witness' direct testimony consisted of four transcribed pages, and the cross-examination of that witness consisted of six transcribed pages. *See* Trial Tr. at 1175-83.

first degree criminal sexual act conviction. *See* Appellate Brief on Appeal dated March 16, 2007, Dkt. No. 11, Exhibit "C" at 26 (citing Penal Law § 70.02[3][a]). Since New York law clearly authorized the imposed sentence, this Court cannot grant Petitioner's habeas application based on a claim that the sentence was unconstitutionally harsh and excessive.

Considering this ground as one alleging a violation of the Eighth Amendment to the United States Constitution, which prohibits the imposition of a sentence that is "grossly disproportionate to the severity of the crime," *Rummel v. Estelle*, 445 U.S. 263, 271 (1980) (citations omitted), the Supreme Court has observed that, "[o]utside the context of capital punishment, successful challenges to the proportionality of particular sentences have been exceedingly rare." *Id.* at 272. "A sentence of imprisonment which is within the limits of a valid state statute is simply not cruel and unusual punishment in the constitutional sense." *Todd*, 2009 WL 5216944, at *7 (citation omitted).

Nothing before the Court indicates that the sentence that the trial court imposed on Petitioner based on his criminal conduct discussed above is "grossly disproportionate to the severity of [his] crime[s]." *Rummel*, 445 U.S. at 271-72. This Court, therefore, finds no basis on which it may properly find that the imposed sentence constitutes a violation of Petitioner's Eighth Amendment rights. For all of the foregoing reasons, this Court denies this final ground on which Petitioner bases his habeas application.

### C.   Certificate of Appealability

The Court notes that 28 U.S.C. § 2253(c) provides, in pertinent part, that, "[u]nless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the

court of appeals from – (A) the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court . . . ."[10]  A court may only issue a Certificate of Appealability "if the applicant has made a substantial showing of a denial of a constitutional right."  28 U.S.C. § 2253(c)(2).  Since Petitioner has failed to make such a showing in this action, the Court declines to issue any Certificate of Appealability in this matter.

### III. CONCLUSION

Having reviewed the state-court record, the documents that the parties submitted in conjunction with this action and the applicable law, and for the above-stated reasons, the Court hereby

**ORDERS** that Petitioner's petition is **DENIED** and **DISMISSED**; and the Court further

**ORDERS** that a Certificate of Appealability shall **not** be issued; and the Court further

**ORDERS** that Clerk of the Court shall return any state-court records not filed herein

---

[10] Rule 22 of the Federal Rules of Appellate Procedure also provides that an appeal may not proceed "unless a circuit justice or a circuit or district judge issues a certificate of appealability under 28 U.S.C. § 2253(c)."  *See* Fed. R. App. P. 22(b).

directly to the Attorney General for the State of New York at the conclusion of these proceedings, including any appeal that any party takes from this Memorandum-Decision and Order; and the Court further

**ORDERS** that the Clerk of the Court shall serve a copy of this Memorandum-Decision and Order on the parties in accordance with the Local Rules.

**IT IS SO ORDERED**

Dated: August 6, 2010
       Syracuse, New York

                                        Frederick J. Scullin, Jr.
                                      Senior United States District Court Judge